Dear Commissioner Laborde:
You requested the opinion of this office concerning the inclusion of a specific bond issue in the calculation of the state debt limitation found in Act No. 813 of the 1993 Regular Session of the Louisiana Legislature ("Act 813"), enacting La. R.S. 39:1367. The Louisiana Public Facilities Authority (the "LPFA") on behalf of the Louisiana Insurance Guaranty Association ("LIGA"), has requested approval of the State Bond Commission for the issuance of not to exceed $130,000,000 of revenue bonds secured by a special assessment levied against insurers (the "Bonds"). Your question is whether the Bonds would be considered to be "net state tax supported debt" for purposes of the calculation required by Act 813.
Act 813 sets a limitation on the issuance of net state tax supported debt and prohibits the issuance of such debt if the amount to be expended for principal, interest and sinking fund requirements on such debt exceeds a specified percentage of the estimate of money to be received by the state general fund and dedicated funds for each respective fiscal year as contained in the official forecast adopted by the Revenue Estimating Conference at its first meeting of each fiscal year. The percentage, beginning with 13.1% for fiscal year 1993-94, is reduced each year until fiscal year 2003-2004, when the percentage is set at 6.0%.
The limitation may be changed or exceeded for a particular project or related projects upon passage of a specific legislative instrument by a two-thirds vote of the elected members of each house of the legislature. [La. R.S. 39:1367(B)] The State Bond Commission is prohibited from approving the issuance of any net state tax supported debt, the debt service requirement of which would cause the limit to be exceeded. [La. R.S. 39:1367(B)].
Paragraph E of Act 813 defines "net state tax supported debt" as follows in pertinent part:
 "(2) `Net state tax supported debt' means all of the following debt obligations issued by the state or any entity in the state for which the state is legally obligated to make debt service payments, either directly or indirectly:
* * *
 (c) Debt secured by statewide tax revenues or statewide special assessments."
Clearly, the Bonds are debt obligations issued by an entity in the state. The questions then remain: (i) are the Bonds debt obligations for which the state is legally obligated to make debt service payments, either directly or indirectly? and (ii) are the Bonds secured by statewide tax revenues or statewide special assessments?
LIGA was created as a "nonprofit unincorporated legal entity". In 1990, that description was amended to read that LIGA is a "private nonprofit unincorporated legal entity". La. R.S.22:1380(A). La. R.S. 22:1380(B) provides in pertinent part:
 "The association shall not and may not be deemed to be a department, unit, agency, or instrumentality of the state for any purpose. All debts, claims, obligations, and liabilities of the association, whenever incurred, shall be the debts, claims, obligations, and liabilities of the association only and not of the state, its agencies, instrumentalities, officers, or employees . . ." (Emphasis added)
However, LIGA "may be considered as if it were a public body for the purpose" of the Open Meetings Law (La. R.S. 42:1 through 13) and the Public Records Law (La. R.S. 44:1, et seq.). La. R.S.22:1380(C)(1). Furthermore, the selection of board members is subject to the approval of the Commissioner of Insurance, La. R.S. 22:1381(A), as is LIGA's plan of operation. La. R.S.22:1382(A)(8).
Recently the United States District Court for the Middle District of Louisiana, the Honorable John V. Parker presiding, dismissed that lawsuit entitled LIGA v. James "Jim" Brown, et al., Civil Action No. 93-0556 "A". The LIGA board had filed suit to challenge the authority of the legislature to amend the LIGA statute to increase the size of the LIGA Board and to provide legislative oversight for LIGA's plan of operations and financial reports. The court, in oral reasons assigned, found that LIGA is sufficiently public in nature to preclude it from asserting a civil rights action against the state which created it.
LIGA has the authority to assess member insurers the amount necessary to pay the obligations of LIGA subsequent to an insolvency, the expenses of handling covered claims, the costs of examinations and other expenses of handling covered claims, and other authorized expenses. La. R.S. 22:1382(A)(3)(a)(i). Through December 31, 2002, no member insurer may be assessed in any year in an amount greater than two percent (2%) of that member insurer's net direct written premiums for the preceding calendar year. Beginning January 1, 2003, the amount of the assessment may not exceed 1% of such premiums. If the maximum assessment, together with the other assets of the association, does not provide in any one year an amount sufficient to make all necessary payments, the funds available shall be prorated and the unpaid portion shall be paid as soon thereafter as funds become available. La. R.S. 22:1382(3)(a)(ii)(a).
Amounts assessed and paid by a member insurer may be offset against the state premium tax liability otherwise due the state in an amount not to exceed ten percent (10%) of the assessment for the year of assessment per year for each succeeding year, not to exceed a total offset of one hundred percent (100%) for each assessment. La. R.S. 22:1382(A)(3)(c).
LIGA is authorized to borrow funds necessary to effect its purposes. In connection with such borrowing, LIGA may assign to the state or any agency or authority thereof, or to any private entity, the right to the receipt of assessments to the extent necessary to provide for the payment of the bonds issued by the state or such agency or authority. La. R.S. 22:1382(B)(2).
The Bonds will be limited obligations of the LPFA secured by the LIGA assessments, with the assessments assigned to a trustee bank. As stated in the Indenture of Trust and Official Statement issued in connection with an outstanding issue of LIGA special assessment secured bonds:
 THE BONDS DO NOT CONSTITUTE OR CREATE AN OBLIGATION, GENERAL OR SPECIAL, DEBT, LIABILITY OR MORAL OBLIGATION OF THE STATE OR ANY POLITICAL SUBDIVISION THEREOF WITHIN THE MEANING OF ANY CONSTITUTIONAL OR STATUTORY PROVISION WHATSOEVER AND SHALL NEVER CONSTITUTE OR CREATE A CHARGE AGAINST THE CREDIT OR THE TAXING POWER OF THE STATE OR ANY POLITICAL SUBDIVISION THEREOF. THE ISSUANCE OF THE BONDS SHALL NOT DIRECTLY OR INDIRECTLY OBLIGATE THE STATE OR ANY POLITICAL SUBDIVISION THEREOF TO PROVIDE ANY FUNDS FOR THEIR PAYMENT . . ."
Based upon the language in the Official Statement and in La. R.S. 22:1380(B), quoted above, while the Bonds are secured by a statewide special assessment, the state is not liable directly for the payment of the debt service on the Bonds. It likewise does not appear that the state is indirectly liable for the payment of debt service on the Bonds. While the member insurers receive a credit from the state for the assessment paid to LIGA, such does not constitute a payment of debt service.
Based upon the foregoing, it is the opinion of this office that the Bonds should not be included in the definition of "net state tax supported debt" for purposes of Act 813.
It should be noted that this opinion addresses only the limited question posed. If you have any other questions, please feel free to contact this office.
Trusting that this adequately responds to your request, I remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: MARTHA S. HESS Assistant Attorney General
RPI/MSH/jav/2977
cc: Members, State Bond Commission Honorable James "Jim" Brown Louisiana Public Facilities Authority Louisiana Insurance Guaranty Association